UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THOMAS L. JESSAMY,

                                Petitioner,

        -against-                                                   No. 21-CV-09242 (NSR)(JCM)

AMY LAMANNA, SUPERINTENDENT, N.Y.S.                                 OPINION & ORDER
D.O.C.C.S.

                                Respondents.

NELSON S. ROMÁN, United States District Judge

     *Pro se* Petitioner, Thomas L. Jessamy ("Petitioner"), commenced this proceeding pursuant to 28 U.S.C. § 2254, *writ of habeas corpus*, challenging the lawfulness of his New York State Supreme Court, Westchester County, judgment of conviction following a jury trial which found him guilty of attempted rape in the first degree, attempted rape in the third degree, assault in the second degree, strangulation in the second degree and assault in the third degree. (ECF No. 1, the "Petition.") Pursuant to 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b), this matter was referred to Magistrate Judge Judith C. McCarthy("MJ McCarthy") to issue a report and recommendation ("R&R"). (ECF No. 10.) On October 19, 2023, MJ McCarthy issued an R&R recommending that the Court deny the petition in its entirety. (ECF No. 63.) On November 5, 2023, Petitioner filed an objection to the R&R. (ECF No. 66.) For the following reasons, the Court adopts the findings and conclusions in MJ McCarthy's R&R and the petition is deemed DISMISSED.



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_____ 7/11/2025

## BACKGROUND

The following facts and  procedural history are extracted from the various submissions and constitute only a summary of the relevant facts.

### Relevant Facts

In the early evening of June 21, 2017, victim RH ("RH"), while riding on a bus from White Plains to Mount Vernon, saw Petitioner who she had met years earlier. After exiting the bus and having a  brief conversation, RH asked petitioner if he knew who sold crack cocaine. Petitioner flagged down a man on a bike whom RH purchased crack from.

Petitioner invited RH to his apartment and said that his sister would be home. Petitioner and RH then took a cab to his apartment. But upon arrival, RH realized that Petitioner's sister was not home. Petitioner watched television in the living room and told RH that she could go into the bedroom to smoke her crack. Once in the bedroom, RH sat on the bed because there were no chairs, but decided not to smoke the crack.

Soon there after, Petitioner entered the room, offered RH some liquor. RH refused the offer and Petitioner left the room only to return moments later and demand that RH perform oral sex on him. When RH refused, Petitioner pulled out his penis and again demanded that RH perform oral sex on him. After refusing to perform  fellatio, Petitioner yelled and repeatedly stuck RH with his hand and fist. After being beaten, Petition placed his penis in RH's mouth. Unable to achieve an erection, Petitioner became angry and blamed RH.

Petitioner removed his pants and got on top of RH. Petitioner order RH to remove her clothing. Fearing she would be beaten further, she complied. Petitioner held RH's arms and tried to vaginally penetrate her. Still unable to obtain a full erection and fully penetrate RH, Petitioner

slapped RH and choked her until she passed out. Petitioner threatened to continue to try until "we got it right."

   With the permission of the Petitioner, RH went to go to the bathroom and took her purse with her. Once in the bathroom, RH called 911 but was unable to provide the operator with an address, which caused the police to investigate several houses in the area. When RH returned to the bedroom, Petitioner demanded that she perform fellatio and repeatedly struck her in the face and head, and pushed her against the furniture. The physical abuse continued until a neighbor knocked on the apartment door and then continued again once they left. During the physical abuse, Petitioner continued to have sexual intercourse with RH. After the sexual assault, RH was able to go to the bathroom again and called 911 but the police were unable to determine her location.

   RH re-entered the bedroom after Petitioner repeatedly banged on the bathroom door. Once back in the bedroom, Petitioner repeatedly slapped, struck and choked RH because she had failed to perform fellatio and he was unable to obtain an erection. Petitioner eventually gave up and left the apartment to visit a neighbor. RH then got dressed and left.

   Once outside, RH tried to find a police station but was badly beaten. She called the police while remaining on the steps of a nearby church. Detective Christopher DiMase ("Det. DiMase"), who previously tried to locate RH, found her near the church. RH appeared beaten, strangled and had two swollen black eyes. She informed Det. DiMase that she had been raped and he then called for medical assistance.

   EMT Raul Pimental arrived and found a disheveled and beaten RH who was bleeding from both eyes. RH initially reported that she was assaulted and later stated that she was sexually assaulted. She was initially taken to Montefiore Mount Vernon Hospital and was then sent to Westchester Medical Center ("WMC"). RH arrived at WMC as a level two acuity patient, meaning

a patient with significant injuries including inter-cranial hemorrhaging consistent with receiving severe blows to the head. She was diagnosed with a fractured left rib and a potential fracture to her C-7 vertebra possibly caused by blunt force or whiplash. RH was given a urine test, which came back positive for opiates (from the morphine she was given at the hospital).

Later while still at the hospital, RH was examined by forensic nurse Karen Carroll ("Nurse Carroll"). RH reported to Nurse Carroll that a man had touched her mouth and vagina with his penis. RH stated that the individual tried to force it in but failed because he could not get an erection. Although RH stated that the male had ejaculated, she did not say where. She further stated that she was slapped, punched and choked. Nurse Carroll noted scratches to RH's back. Nurse Carroll took oral, buccal, neck, vulva, vaginal, perianal and anal swabs of RH, as well as fingernail scrapings.

On June 26, 2017, RH identified the location of the crime, 410 South 10th Avenue, where Petitioner lived. RH identified her assailant as someone known as "Fella." Det. DiMase collected the clothing worn by RH during the attack. Test results from the swabs showed no male DNA on the perianal, anal, vulvar and vagina. A "Y assay" screening test of an oral swab indicated the presence of male DNA, but a second cutting of the swab returned a single source DNA profile that matched RH's buccal swab profile at 21 loci. The inconsistent result was attributed to the tester using different parts of the swab. The Y assay test is not as stringent as the actual DNA analysis procedure.

Petitioner testified at trial that prior to interacting with RH on June 17, 2017, he had not seen her for almost ten years. Petitioner relayed that they had a "favor for flavor" relationship, meaning they would get high together and have sex. During their bus ride, Petitioner had a conversation, which led to Petitioner inviting RH back to his apartment with the intention of having sex. While in the apartment, Petitioner and RH began kissing that eventually led to the bedroom. In the

bedroom, RH undressed and indicated she wanted to smoke crack. Petitioner told RH to smoke in the bathroom but that he was not interested in smoking. After smoking and returning to the bathroom, RH sat on the bed and defecated. When Petitioner discovered RH, he slapped her several times. After, RH washed up, got dressed, and Petitioner walked RH downstairs.

**Procedural History**

Petitioner was charged in a six count indictment in New York State Supreme Court, Westchester County. The charges included attempted rape in the first degree, attempted rape in the third degree, strangulation in the second degree, unlawful imprisonment in the first degree and assault in the third degree**.** Following a jury trial, Petitioner was convicted of all counts except unlawful imprisonment. Petitioner was sentenced as a second violent felony offender and received a term of imprisonment of fifteen years. Petitioner was sentenced to fifteen years on first degree attempted rape, seven years on second degree assault, and one year on the third degree.

Petitioner, represented by counsel, appealed his conviction to New York State's intermediate appellate court. On appeal, Petitioner raised the following arguments: (1) the trial court improperly allowed the prosecution to cross-examine the Petitioner about his prior convictions; (2) the trial court impermissibly allowed the prosecution to solicit testimonial evidence of an uncharged crime–namely rape, criminal sex act, and attempted criminal sex act, which were rejected by the grand jury resulting in undue prejudice; (3) the trial court impermissibly denied the Petitioner's "for cause" challenge to a juror; (4) the trial court impermissibly allowed the 911 calls of the alleged victim to be admitted into evidence as present sense impressions, or in the alternative, as an excited utterance; (5) the conviction was against the weight of the evidence; and (6) the trial court's cumulative errors denied the Petitioner a fair trial.[1] The State opposed Petitioner's appeal.

---

[1] Petitioner filed a Supplemental Appellate Brief, which essentially made the same arguments as his counsel except that his counsel alleged prosecutorial misconduct, and here, Petitioner alleges jury tampering.

On March 3, 2021, the New York State Supreme Court, Appellate Division, Second Department, affirmed Petitioner's conviction in *People v Jessamy*, 139 A.D.3d 704; 139 N.Y.S.3d 899 (2nd Dept. 2021). The appellate court dismissed each of Petitioner's contentions, denying the appeal in its entirety. *Id.* The appellate court noted that jury selection was proper. The "for cause" challenged prospective juror indicated he could be fair, and thus, the court's determination was proper. Similarly, the appellate court determined the trial court's *Sandoval* ruling was proper, balancing all of the relevant factors and considerations.[2] Regarding the weight of the evidence, the court indicated that "great deference is to be accorded to a jury's determination, including factual and credibility determinations." *Id.* at 705. The court found no legal basis for disturbing the jury's findings. All of the remaining challenges, including those raised separately by the Petitioner were deemed meritless.

Petitioner sought leave to appeal to the New York State Court of Appeals, the state's highest court. On May 14, 2021, leave to appeal was denied. *See People v Jessamy*, 37 N.Y.3d 957 (2021). Petitioner subsequently moved for reconsideration, which was also denied. *See People v Jessamy*, 37 N.Y.3d 993 (2021).

On August 17, 2021, Petitioner filed the instant petition for a *writ of habeas corpus*. On March 4, 2022, the Respondent opposed the petition. (ECF Nos. 21, 22.) On March 29, 2022, Petitioner filed a reply. (ECF No. 34.) Thereafter, Petitioner filed several letter submissions.

In his petition, Petitioner asserts six claims: (1) the trial court permitted th prosecution to introduce evidence of an uncharged crime(s)–namely, the completed rape and sexual contact; (2) Petitioner's arrest lacked probable cause; (3) the prosecution engaged in jury tampering; (4) the trial

---

[2] A *Sandoval* Hearing is a procedure that permits a defendant who wishes to testify on his own behalf to move prior to trial to have the court prohibit the prosecutor from cross-examining him regarding unrelated criminal or immoral acts when the probative value for impeachment purposes is outweighed by the potential prejudice to the defendant. *People v. Sandoval*, 34 N.Y.2d 371, 357 N.Y.S.2d 849 (1974); *People v. Matthews*, 68 N.Y.2d 118, 121 (1986)

court improperly allowed a biased juror to sit in judgment; (5) Petitioner's conviction was the result of a conspiracy against him involving his defense counsel and the prosecution; and (6) his conviction was based on the perjured testimony of RH.

## LEGAL STANDARD

### Report & Recommendation

A magistrate judge may "hear a pretrial matter dispositive of a claim or defense" if so designated by a district court. *See* 28 U.S.C. § 636(b)(1)(B). In such a case, the magistrate judge "must enter a recommended disposition, including, if appropriate, proposed findings of fact." 28 U.S.C. § 636(b)(1). Where a magistrate judge issues a report and recommendation, "[w]ithin fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court." *Id.* A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. *Id.* A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. *Id.* However, "[t]o accept the report and recommendation of a magistrate, to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record." *Wilds v. United Parcel Serv., Inc.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003) (quoting *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985)); *accord Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision.") (quoting *Small v. Sec. of HHS*, 892 F.2d 15, 16 (2d Cir. 1989)).

To the extent a party makes specific objections to an R&R, those objections must be reviewed *de novo*. *See* 28 U.S.C.§ 636(b)(l); *see also United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). In a *de novo* review, a district court must consider "the [r]eport, the record,

applicable legal authorities, along with Plaintiff's and Defendants objections and replies." *Diaz v. Girdich*, No. 04-cv-5061, 2007 U.S. Dist. LEXIS 4592, at *2 (S.D.N.Y. Jan. 23, 2007) (internal quotation marks omitted). "However, to the extent a party makes only general and conclusory objections . . . or simply reiterates the original arguments, the district court will review the report and recommendations strictly for clear error." *Harris v. Burge*, No. 04-cv-5066, 2008 U.S. Dist. LEXIS 22981, at *18 (S.D.N.Y. Mar. 25, 2008). The distinction turns on whether a litigant's claims are "clearly aimed at particular findings in the magistrate proposal or are a means to take a 'second bite at the apple' by simply re-litigating a prior argument." *Singleton v. Davis*, No. 03-cv-1446, 2007 U.S. Dist. LEXIS 3958, at *2 (S.D.N.Y. Jan. 18, 2007) (citation omitted).

### Writ of Habeas

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996" ("AEDPA"). *See Harrington v. Richter*, 562 U.S. 86, 97 (2011). 28 U.S.C. § 2254 (b) provides in relevant part:

> An application for a *writ of habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"Habeas review is an extraordinary remedy." *Bousley v. United States*, 523 U.S. 614, 621 (1998) (citing *Reed v. Farley*, 512 U.S. 339, 354 (1994)). To be granted a *writ of habeas corpus* from a federal district court, a petitioner must fully and carefully comply with the provisions of the AEDPA. Before a federal district court may review the merits of a state criminal judgment in a *habeas corpus* petition, the court must first determine whether the petitioner has complied with the

procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254. If a petitioner has met these threshold requirements, a federal district court may hear "an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court" only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court must then determine the appropriate standard of review applicable to the petitioner's claims in accordance with 28 U.S.C. § 2254(d). Generally, a state prisoner has one year from the date his or her conviction becomes final to file a *habeas* petition in federal court. 28 U.S.C. § 2244(d)(1). This limitations period ordinarily begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

The limitations period is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . ." 28 U.S.C. § 2244(d)(2). The limitations period may also be equitably tolled if a petitioner can show that "extraordinary circumstances prevented him [or her] from filing his [or her] petition on time," and the petitioner "acted with reasonable diligence throughout the period he [or she] seeks to toll." *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000).

Under the AEDPA, all state court remedies must be exhausted before a federal court may consider a state prisoner's petition for a *writ of habeas corpus*. 28 U.S.C. § 2254(b)(1)(A); *see also Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014). In the interests of comity and expeditious federal review, "[s]tates should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *see also Daye v. Attorney Gen. of the State of New York*, 696 F.2d 186, 190–91 (2d Cir. 1982). Even where a timely and exhausted *habeas* claim is raised, comity and federalism demand that a federal court abstain from review when the last-reasoned state court opinion to address the claim relied upon an "adequate

and independent finding of a procedural default" to deny it. *Harris v. Reed*, 489 U.S. 255, 262 (1989). A state court decision is "independent" when it "fairly appears" to rest primarily on state law. *Jimenez v. Walker*, 458 F.3d 130, 138 (2d Cir. 2006) (citing *Coleman*, 501 U.S. at 740). A decision is "adequate" if it is "'firmly established and regularly followed' by the state in question." *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999) (quoting *Ford v. Georgia*, 498 U.S. 411, 423–24 (1991)).

Provided a claim meets all procedural requirements, the federal court must apply the AEDPA's deferential standard of review when a state court has decided a claim on the merits. *See Torres v. Berbary*, 340 F.3d 63, 68 (2d Cir. 2003). Under the AEDPA, an application for a *writ of habeas corpus* on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d). A state court decision is "contrary to" clearly established Supreme Court precedent "if 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'" *Torres*, 340 F.3d at 68 (quoting *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)). "[A]n 'unreasonable application' of 'clearly established' Supreme Court precedent occurs when a state court 'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams*, 529 U.S. at 413). While it is clear that the question is whether the state court's application of clearly established federal law was objectively unreasonable, the precise method for distinguishing objectively unreasonable decisions from merely erroneous ones is less clear. However, it is

well-established in the Second Circuit that the objectively unreasonable standard of 28 U.S.C. §

2254(d)(1) means that petitioner must identify some increment of incorrectness beyond error in order

to obtain *habeas* relief.  *Id.* at 68-69.  Under the second prong of 28 U.S.C. §  2254(d), the factual

findings of state courts are presumed to be correct. *See Nelson v. Walker*, 121 F.3d 828, 833 (2d Cir.

1997). The petitioner must rebut this presumption by "clear and convincing evidence." 28 U.S.C.

§ 2254(e)(1).

## DISCUSSION

In his objections to the R&R, Petitioner merely reiterates the same arguments raised in

support of his claims and asserts two new claims sounding in ineffective assistance of counsel and

trial error concerning the admissibility of hearsay evidence. The Court adopts MJ McCarthy's well-

reasoned analysis and legal conclusions, and finds no clear error. To the extent Petitioner's

objections can be deemed specific objections, the Court determines that the claims lack merit and

will address each claim in turn.

### Uncharged Crimes & Perjury

During the trial, the prosecution proffered the testimony of RH in support of the state's case.

Petitioner alleges that RH's testimony was not only perjured testimony but differed from her grand

jury testimony, and  that her altered testimony, which amounted to a claim of rape, was prejudicial

since he was only accused of and indicted for attempted rape.[3]

Generally, mere inconsistency or "direct conflict" in testimony does not, without more,

constitute perjury. *United States v. Gambino*, 59 F.3d 353, 365 (2d Cir.1995). Issues  involving the

credibility of a witness(es) are considered factual, and "special deference" is accorded to the trial

court who is in the best position to make such determinations.  *Bennett v. United States*, 663 F.3d

---

[3] Petitioner raised a similar claim on direct appeal to New York State's appellate courts.

71, 85 (2d Cir. 2011) (internal citations); *see also United States v. Strauss*, 999 F.2d 692, 696 (2d Cir. 1983) (holding that the "jury is exclusively responsible for determining a witness' credibility"). Such deference requires that before a federal court grants *habeas* relief, it is not sufficient for the court to merely disagree with the state court's credibility determination(s), but the court must determine that the state court findings lacked even fair support in the record. *See Marshall v. Lonberger*, 459 U.S. 422, 432 (1983).

What Petitioner provides as examples of perjured testimony can best be described as mild inconsistencies. During the grand jury proceeding, RH testified that during her interaction with Petitioner there was no vaginal or oral penetration. RH attributed the lack of penetration to Petitioner's inability to obtain and maintain an erection as well as her resistance. At trial, RH similarly testified but indicated there may have been some contact. More specifically, RH clarified that while there was some vaginal and oral touching, there was no actual penetration because Petitioner remained flaccid throughout and no actual suction occurred.[4] While there is some variation in the testimony, it cannot be held  that the state court findings and determinations lacked fair support. A *habeas* court must presume that the trier of facts resolved any conflicts in favor of the prosecution and  defer factual determinations for which there is evidentiary support, such that a court reviewing a *habeas* petition may not revisit credibility determinations. *See Shamsuddin v. Smith*, 578 F. Supp. 3d 328, 339 (N.D.N.Y. 2022) (internal citations omitted).

Petitioner similarly argues that the state trial court impermissible allowed evidence of an uncharged crime(s), commonly referred to as a variance,  resulting in undue prejudice. A variance occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment. *See Jelinek v. Costello*, 247

---

[4] Plaintiff testified at trial "I didn't do no, you know, motion. Because he would have still put it down, way down, my mouth if I did the motion..."

F. Supp. 2d 212, 269 (E.D.N.Y. 2003) (citing *United States v. Pelose*, 538 F.2d 41, 45 (2d Cir. 1976)). Because the primary purposes of an indictment is to inform an accused of the charges against him so that he may prepare a defense and to avoid double jeopardy, the critical question is whether the alleged variance has adversely affected the rights of the accused. *See United States v. D'Anna*, 450 F.2d 1201, 1204 (2d Cir. 1971) (internal citations omitted). A variance has been deemed inconsequential or irrelevant "where the allegation and proof substantially correspond, where the variance is not of a character that could have misled the defendant at the trial, and where the variance would not deprive the accused of his right to be protected against another prosecution for the same offense." *Davis v. Poole*, 767 F. Supp. 2d 409, 424 (W.D.N.Y. 2011) (quoting *Kowalczyk v. United States*, 936 F. Supp. 1127, 1141 (E.D.N.Y.1996)).

New York Courts similarly recognize a claim of variance when the proof at trial varies from the indictment and undermines two of the fundamental functions of the indictment, to provide adequate notice to the accused and the exclusive power of the Grand Jury to determine the charges. *See People v. Grega*, 72 N.Y.2d 489, 496 (1988). When a defendant's right to fair notice of the charges or his right to have those charges preferred by the Grand Jury rather than by the prosecutor at trial has been violated, such variance requires a reversal of the conviction. *Id.* When the variance between an indictment and the state's evidentiary proof at trial is immaterial and results in a lack of surprise or prejudice to the accused, reversal is not warranted. *Jelinek*, 247 F. Supp. 2d at 270 (citing *People v. Miller*, 163 A.D.2d 627, 628–29, 558 N.Y.S.2d 269 (A.D. 3d Dept. 1990)) (concluding that no variance occurred where the allegation in the indictment was that a drunk-driving accident occurred during a trip to the victim's home rather than occurring during the return trip).

Here, the Court is in agreement with MJ McCarthy's analysis that Petitioner failed to demonstrate the existence of a variance. The victim testified that the Petitioner tried to penetrate her both vaginally and orally but was unsuccessful due to his inability to achieve an erection. The

victim's trial testimony was consistent with her Grand Jury testimony, the charges contained in the indictment, and the prosecution's core theory of the case. *See Washington v. Walsh*, No. 10-CV-7288 RJS JCF, 2015 WL 4154103, at *7 (S.D.N.Y. July 9, 2015) (finding no variance where the "core" of the prosecution's case remained the same from indictment to conviction). Similarly, to the extent that proffered evidence can be deemed to constitute a variance, the claim still fails. Petitioner was provided with fair notice of the charges and the central theory of the prosecution's case such that he can not argue surprise, or substantial or undue prejudice. The victim's trial testimony only served to provide more details and context to what occurred during the incident. Accordingly, for the reasons provided above and in the R&R, Petitioner's claim of prejudice as a result of alleged uncharged crime(s) and perjured testimony must be dismissed.

### Probable Cause

Petitioner alleges that his warrantless arrest lacked probable cause. His primary contention is that there was a lack of evidence, including DNA evidence to support the initial charge of rape, and that law enforcement officers failed to obtain an arrest warrant. In *Stone v. Powell*, the Supreme Court held "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial. In this context the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force." 428 U.S. 465, 494–95 (1976). In its analysis of *Stone*, the Second Circuit held "[i]f the state provides no corrective procedures at all to redress Fourth Amendment violations, federal *habeas corpus* remains available. It may further be that even where the state provides the process, but in fact, the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process, the federal intrusion may still be warranted." *Gates v. Henderson*, 568 F.2d 830, 840 (2d Cir. 1977).

However, where the state prisoner was given the opportunity for full and fair litigation of his Fourth Amendment claim, there is no *habeas* relief. *Id.*

A review of Petitioner's state appellate litigation indicates he previously raised the same issue in his supplemental brief to the state's appellate court. The appellate court deemed Petitioner's contention meritless. *People v. Jessamy*, 192 A.D.3d at 705 (concluding that defendant's contentions, including those raised in his *pro se* supplemental brief are without merit). Although there appears to be some ambiguity as to whether Petitioner availed himself of the entire state appellate process, as reflected in the R&R, the issue lacks merit.

It is well-settled that "probable cause is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. Probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Maryland v. Pringle*, 540 U.S. 366, 370–71, 124 S. Ct. 795, 799–800 (2003) (citation modified). "The substance of all the definitions of probable cause is a reasonable ground for belief of guilt." *Id.*

Here, the victim provided sufficient factual information to law enforcement officials in the nature of a sexual assault during her initial 911 telephone calls and subsequently after leaving the Petitioner's home. Significantly, the victim was able to identify the assailant as someone whom she had previously met and knew. Additionally, the victim, who had received medical treatment prior to defendant's arrest, suffered significant injuries which were consistent with an assault. Thus, law enforcement officers were in possession of sufficient facts to support a finding probable. Accordingly, Petitioner's probable cause claim is dismissed.

**Jury Selection and Tampering**

Petitioner alleges that the prosecution engaged in jury tampering. More specially, he alleges that he observed the prosecutor speaking to a juror after a lunch recess just prior to the

recommencement of trial. Although Petitioner fails to indicate the substance of the alleged conversation, he asserts that such communication warranted the removal of the juror.

A *habeas* court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment. *See Coleman*, 501 U.S. at 729. The application of the independent and adequate state ground doctrine is grounded in concerns of comity and federalism. *Id.* Similarly, a state prisoner's federal *habeas* petition warrants dismissal if the prisoner has not exhausted available state remedies as to any of his federal claims. *Id.* "The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." *Id.* (quoting *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 490–491 (1973)).

Petitioner first raised the issue of alleged jury tampering following his conviction at his sentencing hearing, which the trial court dismissed. The claim was also raised in Petitioner's supplemental brief to the appellate court. The appellate court dismissed the claim as meritless. Petitioner, however, did not seek to place the issue before the New York State Court of Appeals. The claim is, therefore, procedurally barred. *See Jordan v. Lefevre*, 206 F.3d 196, 198 (2d Cir. 2000) (noting that where petitioner fails to adequately present a claim to the state's highest court, and the claim is deemed barred from *habeas* federal review since it was unexhausted in state court). Stated more succinctly, a petitioner is required to exhaust all state remedies under federal *habeas* corpus statute in order to permit  the state court(s) to pass upon the claim before presenting it as an alleged violation of a federal right. *See Carvajal v. Artus*, 633 F.3d 95 (2d Cir. 2011)."Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in *habeas* only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." *Bousley v. United States*, 523 U.S. 614, 621 (1998) (internal citations omitted).

Petitioner not only failed to exhaust his available state remedies but also fails to provide a reason for failing to do so. Moreover, Petitioner failed to demonstrate that he was actually prejudiced or that he was actually innocent.

Were the Court to consider Petitioner's claim on the merits, the claim would fail. It has been clearly established in this Circuit that a criminal defendant's interest are based upon his Sixth Amendment right to an fair and impartial jury. *See United States v. Moten*, 582 F.2d 654, 660–61 (2d Cir. 1978). When a trial court is advised of possible juror tampering, it is the court's obligation to investigate the matter to determine whether the juror's ability to perform his duty impartially has been adversely affected. *See United States v. Morrison*, 984 F. Supp. 2d 125 (E.D.N.Y. 2013), *aff'd*, 580 F. App'x 20 (2d Cir. 2014). Claims of jury tampering, however, must be based on more than just speculation. *See United States v. Sun Myung Moon*, 718 F.2d 1210 (2d Cir. 1983). Petitioner's claim of jury tampering is based on nothing more than speculation. Moreover, the record strongly supports a finding that the trial court made an inquiry into the prosecutor's alleged encounter with the juror and deemed it mere happenstance–a brief chance encounter lacking in suspicion.

Petitioner's claim of alleged juror bias also lacks merit. A criminally accused defendant is entitled to be tried by a panel of impartial jurors. *See Turner v. State of La.*, 379 U.S. 466, 471 (1965); *People v. Johnson,* 94 N.Y.2d 600 (2000) (determining that nothing is more basic to the criminal process than the right of an accused to a trial by an impartial jury). When a trial court becomes aware of potential juror bias, the trial judge must make sufficient inquiry as to whether bias exists. *See United States v. Corey*, 625 F.2d 704, 707 (5th Cir. 1980). As the record reveals, the prospective juror was forthcoming and disclosed that his spouse, an attorney, formerly (not presently) worked in the district attorney's office. When questioned, the juror indicated that he could sit as a fair and impartial juror. Nothing in the record indicates that the juror was biased. Lastly, Petitioner failed to raise an objection to the juror being impaneled during jury selection and on

appeal. A claim may be procedurally barred from *habeas* review if it was decided at the state level on adequate and independent procedural grounds. *See Coleman*, 501 U.S. at 729–33; *see also People v. Bruno*, 63 A.D.3d 1297, 880 N.Y.S.2d 777 (2009) (noting that defendant failed to preserve for appellate review contention that he was deprived of fair trial based during on jury selection process where defendant made no objection to jury selection process or challenge to individual jurors at time of trial). Accordingly, for the reasons discussed above and as delineated in the R&R, the claim must be dismissed.

**Alleged Conspiracy**

Petitioner alleges that his conviction was the result of a conspiracy against him involving his trial counsel and the prosecution. As delineated in the R&R, the claim was never raised at trial or during Petitioner's state court appeal process. Accordingly, the claim is procedurally barred from federal *habeas* review. *See Jordan,* 206 F.3d at 198. Moreover, the claim is raised in conclusory fashion and a review of the record fails to support even the slights indicia of a conspiracy. As outlined in the R&R, the claim is meritless and must be dismissed.

**Ineffective Assistance of Counsel**

Counsel owes his or her client a duty of loyalty, a duty to avoid conflicts of interest, and when representing a criminal defendant, counsel's role is to assist the defendant in his defense within the permissible rules of law. *See Strickland v. Washington*, 466 U.S. 668 (1984). Such assistance includes the duty to advocate the defendant's cause, to consult with the accused on all matters of importance, and to apprise the defendant of important developments in the course of the prosecution. *Id.* at 688. The Sixth Amendment to the United States Constitution "guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings," which includes the entry of a guilty plea. *See Lee v. United States*, 582 U.S. 357, 363 (2017) ("The Sixth Amendment guarantees a defendant the effective assistance of counsel at 'critical stages of a criminal

proceeding,' including when he enters a guilty plea"). Similarly, sentencing is considered a critical stage of a criminal proceeding. *See Mempa v. Rhay*, 389 U.S. 128 (1967). In regards to a negotiated plea, counsel has the utmost obligation to advise his or her client of "the advantages and disadvantages of a plea agreement." *Padilla v. Kentucky*, 559 U.S. 356, 370 (2010) (quoting *Libretti v. United States*, 516 U.S. 29, 50–51 (1995)). At sentencing, counsel's sage advice and forceful advocacy can serve to minimize a defendant's period of incarceration. *See Glover v. United States,* 531 U.S. 198, 203 (2001).

Claims of ineffective assistance of counsel in the plea bargain context are governed by *Strickland*'s two-part test. *See Missouri v. Frye*, 566 U.S. 134, 140 (2012). In order to reverse a conviction based on ineffective assistance of counsel, there must be a showing that counsel's assistance was constitutionally deficient and that such deficiency prejudiced the defense so as to deprive the defendant of a fair proceeding. *See Strickland*, 466 U.S. at 687–693.

When evaluating counsel's performance, judicial scrutiny must be highly deferential and must not serve as an opportunity to act as a Monday morning quarterback. *See Strickland*, 466 U.S. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound [ ] strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). A defendant claiming ineffective assistance "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.    To establish *Strickland* prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Petitioner's claims of ineffective assistance of counsel fails. A review of the petition indicates that the claim was not asserted in his original *habeas* petition but appears for the first time in his objection to the R&R. Courts in this district have held that is it improper for a petitioner to raise new claims, arguments and factual assertions for the first time in objections to an R&R and have been deemed to be non-objections. *See Razzoli v. Fed. Bureau of Prisons*, No. 12 Civ. 3774, 2014 WL 2440771, at *5 (S.D.N.Y. May 30, 2014)); *Piligian v. Icahn Sch. of Med. at Mount Sinai*, 490 F. Supp. 3d 707, 716 (S.D.N.Y. 2020). Were the Court to consider the claim, upon a review of the trial and appellate record, other than in conclusory fashion, Petitioner has failed to demonstrate that his trial and appellate counsel's advocacy fell below the objective standard of reasonableness and but for counsel's unprofessional errors, the result of the proceeding would have been different. For the reasons stated, the claim must be dismissed.

**911 Calls**

In his objection to the R&R, Petitioner asserts that the trial court impermissibly admitted into evidence three 911 calls made by the victim. As the trial transcript reveals, the calls were made during the assault and/or immediately following. The same issue was raised on appeal by Petitioner to the intermediate appellate court. The appellate court deemed Petitioner's contention meritless. *See People v. Jessamy*, 192 A.D.3d at 705. Petitioner, however, did not seek further review of the claim when he sought leave to appeal to the state's highest court. *See Gates,* 568 F.2d at 840. Thus, the claim would be procedurally barred.

Lastly, the 911 calls were admitted into evidence pursuant to New York State's excited utterance rule. An excited utterance is an out-of-court statement which is made under the stress of excitement caused by an external event, and not the product of studied reflection and possible

fabrication. *See People v. Johnson*, 1 N.Y.3d 302, 306 (2003). Such a statement is an exception to the hearsay rule under New York and federal law. *See Mungo v. Duncan*, 277 F. Supp. 2d 176, 183 (E.D.N.Y.2003). Federal *habeas* review is precluded when there is an independent state basis and adequate support for the decision. *See Harris v. Reed*, 489 U.S. 255, 261–62 (1989). Here, the trial and intermediate appellate courts deemed the evidence admissible pursuant to a state law that is independent of federal law and there is adequate grounds to support the courts decisions. Accordingly, for all the reasons cited, the claim must be dismissed.

## CONCLUSION

For the reasons delineated in this opinion and those delineated in MJ McCarthy's thorough and well-reasoned R&R, which the Court adopts, the petition for a *writ of habeas corpus* is denied. The Clerk of Court is directed to enter judgment and close the case.[5] The Clerk of Court is also requested to mail a copy of this Opinion to *pro se* Petitioner and show service on the docket.

As Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c)(2). The Court certifies pursuant to 18 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purposes of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

Dated: July 11, 2025                                     SO ORDERED:
      White Plains, New York

                                         NELSON S. ROMÁN
                             United States District Judge

---

[5] The Court notes that Petitioner attempts to raise multiple claims which were not raised in his original petition but raised for the first time as an objection to the R&R. The Court takes the position that new claims, arguments and factual assertions raised for the first time in objections to an R&R are non-objections and must be disregarded. Moreover, it is the Court's determination that they are otherwise without merit.